UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| ROSCOE WALLACE, | ) | CIV. 10-4119-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| INTERBAKE FOODS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Roscoe Wallace, filed suit against defendant, Interbake

Foods, LLC, alleging employment discrimination, hostile work environment,

and retaliation. Interbake moves for summary judgment on all of Wallace's

claims and argues that Wallace failed to exhaust his administrative

remedies and is time barred from bringing specific claims. Docket 37. For

the following reasons, the court denies Interbake's motion.

**BACKGROUND**

The facts viewed in the light most favorable to Wallace, the nonmoving

party, are as follows:

Wallace, an African-American male, was hired by Interbake in July

2006 as a sanitation technician. While employed as a sanitation technician,

Wallace was subjected to numerous race-based slurs from another co-

worker, Ton Huan, including the comments "n****r," "lazy," and "ape,"

beginning on Wallace's first day of employment. Shortly after the slurs

began, Wallace informed his supervisor, Derek Debell, of the comments. Debell talked to Huan about Wallace's complaint. Subsequently, Huan began to "turn up" the comments towards Wallace. Docket 45-4 at 118. Wallace again reported Huan's comments to Debell, who informed Wallace that he did not have to work in the presence of Huan. Wallace then asked to perform his work in isolation from other employees. Wallace also told Debell that Interbake should hold sensitivity training.

In early 2007, Steve Branson, a maintenance employee, informed Wallace and other sanitation employees that they could solve a problem if they would just "n****r-rig" it. Docket 45-4 at 119. Branson immediately apologized and Wallace "felt sincerely" that Branson did not mean anything "vicious" by the comment, but rather that the comment reflected the conditions of Wallace's working environment. *Id.* Interbake and Wallace discussed disciplining Branson, including termination, but Wallace believed termination was not necessary.

In July of 2007, Interbake held sensitivity training. Huan was dismissed in August of 2007. Wallace does not allege any other discrete racially hostile remarks during his first tenure in the sanitation department, but indicates that he was aware of continuing racial harassment of African-American employees and reported those incidents to Interbake.

2

After three months in the sanitation department, Wallace was promoted to weekend fill-in foreperson. Four to five months after his first promotion, Wallace was promoted again to third shift foreperson. In March of 2008, Wallace was told by Debell, by then Wallace's manager, to apply for a resource auditor (RA) job. Wallace "[did not] have a clue" what the job entailed. Docket 45-4 at 115. Wallace was promoted to the position with two other employees, Ronnie Houston, an African-American, and Colby White, a Caucasian. Soon after Wallace's promotion, he was subjected to racial comments from other employees, including being called an "Affirmative Action Baby." Wallace received other nonracial hostile comments as well.

Wallace was informed of comments made by Lewis Gaiani, a supervisor, referencing "putting those boys in that position." Docket 45-4 at 83. Wallace alleges Interbake was trying to cover up for past discrimination and also to set up Wallace and Houston for failure due to their lack of relevant experience. *Id.* Wallace and Houston informed the managers of racist attitudes among several co-workers in the resource department. None of the hostile attitudes involved any of the Caucasian workers, but only Wallace and Houston. Docket 45-4 at 8. Wallace claims the managers "ignored the environment they created" even though Wallace informed them of the effect the working environment was having on him. Docket 45-4 at 7-8.

3

After Wallace's promotion to the RA position, he worked the third shift, which traditionally ran from 11 p.m. to 7 a.m. Wallace frequently worked this shift between the time of his promotion to RA through March 27, 2009. Docket 45-4 at 208-09. Starting on March 30, 2009, Wallace's shift was scheduled from 10:30 p.m. to 7 a.m. *Id.* Wallace arrived at 10:44 p.m. on March 30, 10:58 p.m. on March 31, 10:54 p.m. on April 1, and 10:45 p.m. on April 2. Interbake considered Wallace tardy for each shift.

Under Interbake's attendance policy, employees are assigned points for tardies and absences. Each tardy is one-half of one point and each absence is at least one point. Interbake may discipline employees for accruing points and terminate an employee who accrues five or more points. Interbake gave Wallace a written warning indicating that he had four points on April 1, 2009. Docket 39-10 at 9. Wallace was assigned one-half of one point for each tardy on March 30, March 31, April 1, and April 2, 2009, but asserts he was not given any indication that he was considered tardy on any of those dates, nor was he given any warnings prior to sending an e-mail to Gaiani on April 4, 2009, after he passed the five-point threshold.

Interbake states that RAs were expected to show up 30 minutes early to each shift to coordinate with the previous shift's employees, known as "cross-shifting." Docket 38 at 13.  But Wallace states that early arrival was not customarily expected or enforced. In fact, Wallace was informed that

Interbake policy required an employee to ask for permission if the employee needed to arrive at work more than 15 minutes before a shift to avoid overtime complications. Wallace believes Interbake changed the start time of his shift without notifying him "in an effort to reflect tardiness without knowledge to [Wallace]." Docket 45-1 at 7. Wallace is unaware of any other Interbake employee receiving tardiness points without a warning.

After Wallace accrued more than five points, Human Resource Manager Tiffani Stegemann investigated Wallace's card swipes from Interbake's timekeeping system. After Interbake determined that Wallace was late on March 30 and 31 and April 1 and 2, Wallace was terminated.

Subsequently, Wallace filed a grievance through his union. Before meeting with Wallace, Interbake solicited feedback from Wallace's supervisors to decide whether to reinstate Wallace. Based on positive comments from Wallace's supervisors, Wallace was offered employment under a Last Chance Agreement, which he accepted. Wallace returned to Interbake on April 24, 2009, as a sanitation technician.

Wallace contacted Interbake's hotline on May 6, 2009, to report a potential threat from Stegemann. Stegemann was investigating an alleged incident involving other Interbake employees. Stegemann interviewed Wallace, and Wallace untruthfully denied knowledge of the incident. The following day, Stegemann threatened to discipline or fire Wallace if he was

5

lying. Wallace admits that he did not provide Interbake with all the requested information, but he asserts that he failed to provide the information because it concerned his direct superior, Debell, and Houston.

Shortly after contacting the Interbake hotline about Stegemann's threat, Wallace's weekend supervisor, Jeff Niles, denied Wallace's vacation day request. Wallace claims that Niles knew Wallace was working on a Last Chance Agreement, and that Wallace would be fired if he used his vacation day without approval. Ultimately, Wallace was granted the vacation day by another supervisor.

In June 2009, Wallace found a note with the writing "Die! RIP N****r Boy" and Wallace's employee identification number in the locker he was using. Wallace reported the note and was excused from the remainder of his shift. A security guard accompanied Wallace throughout his shift the next day. Although Interbake investigated the note, it never determined who wrote the note. Wallace was never informed of the findings of the investigation. Additionally, Wallace alleges that Stegemann implied Wallace wrote the note to get out of work, and that Interbake's management displayed deliberate indifference to Wallace's complaints regarding the note investigation.

On August 24, 2009, Wallace filed a charge of discrimination and retaliation with the South Dakota Department of Labor (SDDOL). The charge

6

was also filed with the Equal Employment Opportunity Commission (EEOC). Wallace's earliest alleged date of discrimination was July 24, 2006. Wallace's last alleged date of discrimination is listed as August 3, 2009. Wallace checked the "continuing action" box indicating that the discrimination was still on-going at the time of his charge of discrimination. Docket 45-4 at 43.

On September 13, 2009, Wallace did not report for his scheduled shift. Wallace claims he called in and spoke to Alex Reposa, his foreperson for that shift. Reposa admits that Wallace told him that Wallace would miss his shift, but Reposa forgot to tell others. Docket 39-21 at 44. Interbake asserts that the absenteeism call-in line contained no message from Wallace on September 13, 2009. As a result, Interbake claims Wallace was in violation of its attendance policy. Docket 38 at 16.

Five days later Interbake received a report that Wallace was using a cell phone at work in violation of Interbake's employee conduct policy. Wallace admits to having the cell phone, but denies using the phone while at work. He asserts that he needed to maintain possession of his phone while at work because he "did not trust [Interbake] and the work environment they created." Docket 45-1 at 14. Furthermore, Wallace claims that Interbake was watching him carefully to find a way to fire him. Docket 39-20 at 4.

7

Wallace did not cooperate with Interbake's investigation into either his missed shift or his cell phone use. Wallace claims that he did not cooperate because he had submitted complaints against the people investigating him, those people knew of the complaints, and Wallace felt he was being set up.

On October 2, 2009, Interbake met with Wallace to inform him that he was being terminated for his failure to report his absence on September 13 and his alleged use of a cell phone during work time. Docket 45-4 at 185. The termination letter also references Interbake's conclusion that Wallace acted in an insubordinate manner and failed to cooperate with Interbake's investigation of those incidents.

On October 16, 2009, Wallace provided the SDDOL with eleven single-spaced pages of disputed facts in reply to Interbake's response to Wallace's original charge. After investigation by the South Dakota Division of Human Rights (SDDHR), the EEOC dismissed Wallace's case and issued him a right-to-sue letter. Subsequently, Wallace filed suit in this court alleging race discrimination and retaliation.[1]

---

[1] Wallace did not initially plead a hostile work environment claim, although his complaint alleged facts that would properly be considered in such a claim. Docket 1. Nonetheless, the court will consider Wallace's hostile work environment claim. Interbake was put on notice of the hostile work environment claim because Interbake answered it and has not objected to the consideration of such a claim. Furthermore, pleadings are to be construed liberally so as to do justice. Fed. R. Civ. P. 8.

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of her case on which she bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)).

Summary judgment is precluded if there is a factual dispute that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). Evidence based on inferences is acceptable in an employment discrimination case. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal

9

Rules[.]" *Celotex Corp.*, 477 U.S. at 327. Because summary judgment is a useful pretrial tool in all civil cases, including ones alleging discrimination, summary judgment motions involving discrimination are treated no differently than summary judgment motions involving "other ultimate questions of fact." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

## DISCUSSION

### I.   **Evidence**

Interbake objects that some of the evidence offered by Wallace in Docket 45-4 is inadmissible hearsay, lacks foundation, or lacks authentication. Docket 53. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "If a party fails to properly support an assertion of fact . . . the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment . . . or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e). But summary judgment cannot be granted simply because a party fails to comply with Rule 56(c), "and the court may choose not to consider the fact undisputed, particularly if the court knows of record materials that show grounds for genuine dispute." Fed. R. Civ. P. 56 advisory committee's note (2010 amendments).

10

"Rule 56(e) imposes an affirmative duty on each party to show that the material presented in support of or in opposition to the [summary judgment] motion would be admissible at trial . . . ." 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (3d ed. 1998). But "strict adherence to the demands of Rule 56(e) could lead to an undue amount of energy being devoted to 'qualifying' affidavits or to the precipitous granting of summary judgment . . . ." *Id.* Given the burden of proof for summary judgment, "[t]he cases seem to indicate that judges will be quite demanding in their examination of the moving party's papers, but will treat the papers of the party opposing the motion indulgently." *Id.*

"[A] court should disregard only inadmissible portions of a challenged affidavit and consider the rest of it." *Id.* Without making a detailed finding on each one of Interbake's 24 objections (many of which state multiple generalized grounds for objection), the court here notes that even if a portion of Wallace's affidavits are improper, the court is able to find other materials in the affidavits and in the record that create a genuine dispute of material fact on each claim considered below.

Separately, Interbake urges the court to deem admitted each portion of Interbake's Statement of Undisputed Facts (Docket 44), which is not explicitly denied by Wallace. Docket 52. Given the court's discretion to treat the papers of the nonmoving party "indulgently," see Wright & Miller at

§ 2738, the court accepts Wallace's "clarifications" of fact as denials where denial is appropriately supported. Furthermore, as discussed above, the court may choose to treat facts as genuinely disputed where the record supports such treatment, to avoid precipitously granting summary judgment. At this stage, the court takes all *facts* before it (as opposed to legal conclusions or argument), views them in the light most favorable to Wallace, and determines whether a genuine dispute exists.

## II.   **Exhaustion of Administrative Remedies**

Interbake argues that Wallace is precluded from asserting any claims resulting from his October 2, 2009, termination because Wallace failed to update his August 24, 2009, EEOC charge to include any conduct regarding Interbake's second termination of his employment. Docket 38 at 12. Wallace argues that he did exhaust his administrative remedies because the SDDHR actually investigated his claim and because he effectively amended his EEOC charge by providing information surrounding his October 2009 termination.

A plaintiff must exhaust his administrative remedies before bringing suit in federal court under Title VII. *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). Pursuing administrative remedies gives the EEOC the opportunity to investigate claims of employment discrimination and to work toward voluntary compliance and conciliation. *Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005). Once administrative remedies are exhausted, the

12

plaintiff can bring his or her "employment-discrimination claim, along with allegations that are like or reasonably related to that claim." *Id.* at 585 (citation omitted). "The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge." *Id.*

When alleged discriminatory or retaliatory conduct occurs after the timely filing of an EEOC charge, the Eighth Circuit has held that a "plaintiff will be deemed to have exhausted administrative remedies if the allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought." *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986). In recent years the Eighth Circuit has narrowed its view of what is "like or reasonably related" to the originally filed EEOC allegations. *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 672-73 (8th Cir. 2006) ("[R]etaliation claims are not reasonably related to underlying discrimination claims." (internal quotations omitted)). This narrowing of the "like or reasonably related" standard was based largely on the reasoning of the Supreme Court in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which held that a discrete act of discrimination constitutes a separate actionable employment practice, and each discrete act starts a new clock for filing charges based upon it. *Id.* at 113-14.

13

But the Eighth Circuit has "not wholly abandoned the theory that reasonably related subsequent acts may be considered exhausted." *Wedow*, 442 F.3d at 673 (citing *Parisi v. Boeing Co.*, 400 F.3d 583, 585-86 (8th Cir. 2005)). Indeed, the Eighth Circuit continues to hold that "[t]he proper exhaustion of administrative remedies gives the plaintiff a green light to bring [his or] her employment-discrimination claim, along with allegations that are 'like or reasonably related' to that claim in federal court." *Wedow*, 442 F.3d at 673 (quoting *Parisi*, 400 F.3d at 585). Elsewhere the Eighth Circuit has reaffirmed its holding that "[w]e do not require that subsequently-filed lawsuits mirror the administrative charges" as long as " 'the sweep of any subsequent judicial complaint [is no broader than] the scope of the EEOC investigation which could reasonably be expected to grow out of the charge . . . .' " *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004) (quoting *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988)), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). Under *Wedow*, when a plaintiff alleges retaliation in an EEOC charge and subsequently is subjected to further retaliation, the plaintiff may bring a retaliation claim for subsequent retaliatory acts. *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852, n.1 (8th Cir. 2012).

14

The facts in Wallace's case meet the exception recognized by *Wedow*. Both Wallace and the parties in *Wedow* alleged ongoing discrimination and retaliation when they filed their EEOC charges, and then later suffered additional alleged retaliation for subsequent workplace conduct. *Wedow*, 442 F.3d at 674-75; Docket 1 at 2-6; Docket 45-3 at 3-6. In both cases the alleged retaliations were not based on new theories but instead were the result of the "same type of work experiences" that caused the parties to file the initial charges. *Wedow*, 442 F.3d at 674-75; Docket 1 at 2-6; Docket 45-3 at 3-6. Therefore, Wallace exhausted his remedies and did not need to file a new EEOC charge.

Additionally, Wallace contends that he constructively amended his EEOC charge when he provided the SDDHR and the EEOC with information related to his October 2, 2009, termination. Docket 45-3 at 4. In *Wedow*, the court held that "a reasonable EEOC investigation of alleged 'ongoing and continu[ing]' retaliation in this case *would certainly have* focused on whether or not the retaliation alleged was in fact existent at the time of the filing[.]" *Wedow*, 442 F.3d at 674 (emphasis added). In Wallace's case the SDDHR *actually did investigate* the subsequent retaliation.

Interbake's reliance on *Richter* is misplaced. In *Richter* the Eighth Circuit merely re-asserted the principle established in *Morgan* and *Wedow*, namely that retaliation claims are not "like or reasonably related" to

15

discrimination claims, and thus a plaintiff would need to file a new EEOC charge for retaliation after only alleging discrimination in a prior EEOC charge. *Richter*, 686 F.3d at 852. Wallace's facts do not fit that pattern. Wallace alleged discrimination *and retaliation* before suffering another alleged retaliatory act and thus he does not need to file a new EEOC charge.

Therefore, the court finds that Wallace has exhausted his administrative remedies with respect to his October 2, 2009, termination. To find otherwise and require Wallace to file a new administrative charge "would create needless procedural barriers." *Anderson*, 807 F.2d at 148.

## III.   Time-Barred Claims

Interbake next asserts that several of Wallace's claims are time barred. Under Title VII, an employee aggrieved by an unlawful employment practice who "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice" generally must file a charge with the EEOC within 300 days "after the alleged unlawful practice occurred." 42 U.S.C. § 2000e-5(e)(1). Wallace argues that he is not precluded from relying on events that occurred more than 300 days prior to the filing of his EEOC charge because the events were part of a "continuing violation" and thus do not start or end on a particular day.

42 U.S.C. § 2000e-5(e)(1) specifies the prerequisites a plaintiff must satisfy before filing suit. *Morgan*, 536 U.S. at 109. Under § 2000e-5(e)(1), an individual must file a charge within the statutory period and provide notice

16

to the party against whom the charge is made within 300 days in a state that has an entity with the authority to grant relief to an employee who initially files a grievance with the EEOC. *Morgan*, 536 U.S. at 109. In all other states the charge must be filed within 180 days. *Id.* Because South Dakota is a state that has an entity with the authority to grant relief, the 300-day deadline applies. *See* SDCL 20-13-28 ("The Division of Human Rights may receive, investigate, and pass upon charges alleging unfair or discriminatory practices."); *see also Robe v. Allender*, No. 09-CIV-5040-JLV, 2012 WL 704201, at *2 (D.S.D. March 4, 2012) (unpublished) (applying the 300-day time period in South Dakota).  The Court proceeded to analyze when an "unlawful employment practice" occurred and determined that "[t]he answer varies with the practice." *Morgan* at 110.

### A.    Discrimination and Retaliation

In the case of discrete retaliatory or discriminatory acts, the Supreme Court has determined that such an act "occurred" on the day that it "happened." *Id.* Therefore, a party in South Dakota must file within 300 days of the date of the act or lose the ability to recover for the act. Wallace filed his EEOC charge on August 24, 2009. As a result, he is time barred from recovering for any events prior to October 28, 2008, with regard to his retaliation and race discrimination claims. Even though Wallace argues the acts are connected or part of a "continuing violation," the Supreme Court has "repeatedly interpreted the term 'practice' to apply to a discrete act or

17

single 'occurrence' even when it has a connection to other acts." *Id.* at

111(citing *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)).

　　The fact that Wallace alleges retaliatory and discriminatory acts

within the 300-day time period prior to his EEOC charge does not make

timely those acts that fall outside the 300-day period. *Id.* at 112 (citing

*United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977)). Each discrete act starts

a new clock for filing a charge related to that act. *Id.* at 113. Wallace's

failure to assert his rights based on those acts outside of the 300 days

preceding the filing of his EEOC charge, however, does not prevent him from

filing his charge of retaliation or discrimination for those acts within the

300-day time period, provided they are independently discriminatory. *Id.*

Wallace may use acts outside of the 300-day time period as background

evidence supporting his current, timely claims. *Id.*

## B.　Hostile Work Environment

　　Unlike discrete retaliatory or discriminatory acts, hostile work

environment claims are based upon repeated conduct. *Morgan*, 536 U.S. at

115 (citing 1 B. Lindermann & P. Grossman, *Employment Discrimination Law*

348-49 (3d ed. 1996)). In these claims, the unlawful employment practice

may occur over a series of days or even years, and thus does not "occur" on

one particular day. *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993)).

Instead these claims are based on the cumulative effect of conduct that

individually may not be actionable, but collectively forms a single "unlawful employment practice." *Id.* at 115-17.

42 U.S.C. § 2000e-5(e)(1) requires only that a Title VII plaintiff file a charge within 300 days after the unlawful employment practice happened. *Id.* at 117. "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period . . . may be considered . . . ." *Id.* Because Wallace alleges that several acts contributing to a hostile work environment occurred within 300 days of his EEOC charge, all of Wallace's hostile work environment claim is timely. *Id.* at 118.

## IV.    Discrimination

To defeat Interbake's motion for summary judgment, Wallace must either present direct evidence of unlawful discrimination or alternatively create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Gibson v. American Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012) (citing *Humphries v. Pulaski Cnty. Special Sch. Dist.*, 580 F.3d 688, 692 (8th Cir. 2009)). As discussed in Part II, *supra*, Wallace may only recover for discriminatory acts occurring on or after October 28, 2008. But Wallace may rely on discriminatory acts prior to October 28, 2008, as background information for his complaint. *Morgan*, 536 U.S. at 113.

19

Wallace does not contend that any of the evidence before the court is direct evidence; therefore, the court will consider Wallace's claim under the *McDonnell Douglas* burden-shifting framework. Under *McDonnell Douglas*, " '[a] plaintiff must [first] establish a prima facie case of discrimination.' " *Gibson*, 670 F.3d at 853 (quoting *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011)). A prima facie case requires a plaintiff to show " '(1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination . . . .' " *Id.* at 853-54 (quoting *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010)). If a plaintiff establishes a prima facie case, " 'the defendant may rebut the prima facie case by articulating a non-discriminatory rationale for its action.' In response, 'the plaintiff must prove that the defendant's proffered rationale was merely pretext for discrimination.' " *Id.* (quoting *Jackson*, 643 F.3d at 1086). The plaintiff may establish pretext by " 'adducing enough admissible evidence to raise genuine doubt as to the legitimacy of [the defendant's] motive.' " *Id.* (quoting *Anderson v. Durham D & M, LLC*, 606 F.3d 513, 521 (8th Cir. 2010)).

Interbake concedes that Wallace satisfies the first three elements of a prima facie case, but argues that Wallace cannot establish the fourth element because his April 2009 termination was due to excessive tardies

and his October 2009 termination was due to his failure to show up for his September 13 shift, his use of a cell phone while on duty, and his failure to cooperate with Interbake's investigation. Alternatively, Interbake offers those same rationales as legitimate, nondiscriminatory motives for terminating Wallace.

With respect to Wallace's first termination, he has provided evidence that Interbake customarily did not expect him to arrive exactly 30 minutes prior to his shift. Wallace testified that he had been arriving fewer than 30 minutes before his shift the entire time he was an RA, and it wasn't until he sent an e-mail about potential discrimination that his shift time was changed to 10:30 and he was assessed enough attendance points without notice to result in termination. Viewing the facts in the light most favorable to Wallace, this evidence both creates an inference of discrimination and raises doubt about the legitimacy of Interbake's proffered rationale.

With respect to Wallace's second termination, Wallace provided evidence that he did call in his absence on September 13, which is corroborated by other testimony. Additionally, Wallace testified that he did not use his cell phone on September 18 while on duty. Furthermore, the evidence submitted by Interbake indicates that Interbake was watching Wallace closely, which supports Wallace's claim that Interbake was targeting him to be fired. Therefore, the evidence both creates an inference

of discrimination and raises doubt about the legitimacy of Interbake's proffered rationales for Wallace's second termination.

Based on the evidence before the court, a reasonable jury could find that Interbake discriminated against Wallace. "At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial. *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012). Furthermore, " '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . .' " *Id.* (quoting *Anderson*, 477 U.S. at 255).

## V.    Hostile Work Environment

"Title VII . . . prohibits an employer from subjecting its employees to a hostile work environment 'because of such individual's race, color, religion, sex, or national origin.' " *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 863 (8th Cir. 2010) (quoting *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005)). A hostile work environment claim has the following elements: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012) (quoting *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006)).

22

"For claims of harassment by non-supervisory personnel, [a plaintiff] must show that [the] employer knew or should have known of the harassment and failed to take proper action." *Id.* (quoting *Gordon*, 469 F.3d at 1194-95).

Interbake asserts that Wallace can only show that he is a member of a protected class. Interbake contends that Wallace cannot establish that he was subjected to unwelcome harassment, that the harassment was based on a protected characteristic, or that it was sufficiently severe to support a prima facie case. Wallace has introduced ample evidence that shows he was subjected to unwelcome harassment based on his race, including, among other things, being subjected to workplace racial slurs, other race-based hostile comments, and a racist threat. Therefore, to establish a prima facie case, Wallace must show that the harassment was severe enough to affect a term, condition, or privilege of employment.

The alleged conduct must be both objectively and subjectively offensive. *Peterson v. Scott Cnty.*, 406 F.3d 515, 523-24 (8th Cir. 2005), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc). In making its determination, a court may consider the following factors: (1) the frequency of the offending conduct; (2) its severity; (3) whether it was physically threatening or humiliating; and (4) whether it unreasonably interfered with work performance. *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 630 (8th Cir. 2005) (citing *Harris v.*

*Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[T]he Supreme Court has 'made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment.' " *Fuller*, 618 F.3d at 863 (quoting *Al-Zubaidy*, 406 F.3d at 1038). " 'Simple teasing,' offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' " *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998)).

Interbake argues that, taken separately, each incident is not severe. But Interbake misses the point. A hostile work environment is a cumulation of all the offensive conduct in the workplace. Interbake cites no authority that each offensive statement must be considered separately. Wallace has introduced sufficient admissible evidence for a jury to find that based on the frequency, severity, and threatening nature of the comments, made in and out of his presence, the harassment was severe. "Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998).

If the harassment was by a nonsupervisory employee, Wallace must also show that Interbake knew or should have known about the harassment and failed to take appropriate action. Wallace has introduced evidence that

some of the harassment was by Stegemann and Gaiani, both supervisors. In addition, Interbake was aware of the other incidents of harassment by nonsupervisory employees because Wallace reported them. For those incidents, Wallace has raised a genuine dispute of material fact about whether Interbake responded appropriately or in a timely fashion, and a reasonable jury could find that Interbake did not respond appropriately.

Wallace has established that there are genuine issues of material fact relating to the severity of the harassment he suffered and to the sufficiency of Interbake's responses to known harassment. Therefore, summary judgment on Wallace's hostile work environment claim is denied.

## VI.  Retaliation

Title VII provides that it is "unlawful . . . for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). To make a retaliation claim, Wallace must establish "direct evidence of discrimination or create an inference of it under the *McDonnell Douglas* burden-shifting framework." *Young-Losee v. Graphic Packaging Int'l, Inc.*, 631 F.3d 909, 912 (8th Cir. 2011).

To establish a prima facie showing of retaliation, Wallace must show: (1) he engaged in a protected activity; (2) he suffered an adverse employment action, and (3) there was a causal connection between the protected activity

and the adverse employment action. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1022 (8th Cir. 2011). Unlike other Title VII claims, a plaintiff alleging retaliation "must [prove the claims] according to traditional principles of but-for causation, not the lessened [motivating factor] causation test stated in [42 U.S.C.] § 2000e-2(m)." *Univ. Of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517, 2533 (2013). If the employee can make a prima facie showing, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its action. Once the employer states a legitimate reason for the action the burden shifts back to the employee to bring forth evidence of pretext. *Pye*, 641 F.3d at 1022.

Wallace contends that Interbake retaliated against him when it terminated him in April 2009 and when it terminated him again in October 2009.[2]

### A.    Wallace's April 2009 Termination

Interbake argues that Wallace was not engaged in protected activity relating to his first termination. Complaints to management or objections to harassment can be protected conduct. *Ogden v. Wax Works*, 214 F.3d 999, 1007 (8th Cir. 2000). Interbake cites no authority for the proposition that

---

[2] Wallace states that he intends to introduce evidence relating to his promotion to RA and Niles's denial of his vacation request, but those incidents do not support independent retaliation claims. Docket 45-3 at 17-18.

Wallace was not engaged in protected activity when he e-mailed his supervisor regarding possible discrimination.

Interbake contends that because the only causal connection between Wallace's complaint and his termination is temporal, and the termination relates to behavior which started before the protected action occurred, Wallace has not made a prima facie showing. "Evidence that an employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity." *Hervey v. County of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008). But in this case, the temporal proximity between Wallace's complaint and his termination is only a few days. Furthermore, the evidence before the court creates a genuine dispute of fact about whether Wallace's shift time was consistently enforced and whether his shift time was changed as a mechanism to provide a pretextual excuse for Wallace to be fired.

Based on *Nassar*, Interbake argues that Wallace's formulation of a causal connection would allow every employee who faced discipline to file a complaint and then contend any subsequent discipline was retaliatory. Given the particular facts of this case, Wallace's attendance record, and the manner in which Wallace's tardy points were accrued, the court finds that Wallace has met his prima facie burden and provided sufficient evidence at this stage to create a genuine factual dispute about whether he would have

been terminated in April 2009 "but for" his complaints. Wallace's credibility, and the competing credibility of Interbake's proffered motives for termination, should be left for a jury to weigh, and summary judgment is denied.

### B.   Wallace's October 2009 Termination

Interbake again argues that temporal proximity is insufficient to make a prima facie case, and that Wallace was fired for nonretaliatory reasons. The temporal proximity between Wallace's SDDHR complaint and his termination (one and one-half months) is close enough in time to be suspect of retaliation. Furthermore, Wallace provides evidence that he did call in absent on September 13, that he did not use a cell phone while on duty, and that he was watched carefully by Interbake management in an effort to fire him. Considered together, the evidence is sufficient for a jury to find a connection and legal causation between Wallace's complaint and his termination, and to rebut Interbake's proffered legitimate reasons. Therefore, summary judgment on Wallace's retaliation claim relating to his October 2009 termination is denied.

### CONCLUSION

Interbake moved for summary judgment on Wallace's claims of discrimination, hostile work environment, and retaliation. Wallace raised genuine issues of material fact relating to all three claims. Additionally, Wallace exhausted his administrative remedies with respect to all three

claims. Wallace is time barred from recovering for discriminatory and retaliatory acts that occurred prior to October 28, 2008, but he may recover on those claims for acts alleged to have occurred within the statutory time frame. Thus, it is

ORDERED that defendant's motion for summary judgment (Docket 37) is denied.

Dated September 19, 2013.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE